United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Brian Keegan, Plaintiff, )<br>)<br>v. )<br>)<br>Daniel P. Minahan, Perk Industries )<br>Inc., and Innovative Health Labs )<br>Inc., Defendants. ) | Civil Action No. 23-60501-Civ-Scola |

### Order on Motion to Dismiss

This matter is before the Court on the Defendants Daniel P. Minahan, Perk Industries Inc., and Innovative Health Labs Inc.'s (collectively, the "Defendants") motion to dismiss, or alternatively to strike certain portions of, the Plaintiff Brian Keegan's class action complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f). (Mot., ECF No. 15.) Keegan has responded to the motion, and the Defendants have replied. (Resp., ECF No. 16; Reply, ECF No. 17.) Having reviewed the record, the parties' briefs, and the relevant legal authorities, the Court **grants** the motion. (**Mot., ECF No. 15**.)

### 1. Background[1]

In this action, Keegan seeks redress on behalf of himself and a putative nationwide class of consumers for injuries resulting from the Defendants' alleged fraud in advertising, marketing, and distributing Boner Bears, a purportedly efficacious and natural herbal remedy for erectile dysfunction ("ED"). (Compl., ECF No. 1.)

Per Keegan, the Defendants are lying to consumers about the nature of Boner Bears and its constituent ingredients. (*Id.* ¶ 3.) The Defendants sell Boner Bears as a natural solution for ED, claiming, for example, that it contains "a proprietary blend of organic ingredients designed to increase performance in the sack." (*Id.* ¶¶ 2, 14.) To that end, the Boner Bears label denies the presence phosphodiesterase ("PDE") inhibitors, which are pharmaceuticals commonly used to treat ED. (*Id.* ¶¶ 4, 14.) In reality, however, the product contains a substantial dose of a PDE inhibitor known as tadalafil. (*Id.* ¶¶ 4, 15.)

---

[1] This background is based on the allegations in Keegan's complaint. For the purposes of evaluating the Defendants' motion, the Court accepts Keegan's factual allegations as true and construes the allegations in the light most favorable to him per Federal Rule of Civil Procedure 12(b)(6).

Keegan is a citizen of New Jersey who suffers from medical conditions that prohibit him from ingesting tadalafil. (*Id.* ¶ 9.) In July 2022, he purchased Boner Bears in reliance on the Defendants' claim that the product contained only natural ingredients. (*Id.*) Upon consuming the product, however, he experienced a headache, dizziness, and blurred vision. (*Id.*) Because tadalafil is meant to be used only by prescription, and under the supervision of a physician, Keegan claims that the Defendants are essentially "drug traffickers" who are fraudulently dosing consumers like him with what is in fact a controlled drug. (*Id.* ¶¶ 5, 16.)

The Defendant Daniel P. Minahan, a Florida citizen, is the alleged leader of the enterprise by which Boner Bears is manufactured and sold to the United States consumer public. (*Id.* ¶ 10.) Minahan owns and operates the Defendant Perk Industries Inc., a Delaware Corporation based in Florida that, according to Keegan, fraudulently petitioned the U.S. Patent and Trademark Office to grant a trademark for the Boner Bears mark as an herbal dietary supplement. (*Id.* ¶ 11.) Boner Bears are manufactured and prepared to be shipped to consumers at the Defendant Innovative Health Labs Inc.'s premises in Fort Lauderdale, Florida. (*Id.* ¶ 12.)

Based on the foregoing allegations, Keegan brings a single count of common law fraud against the three Defendants, relying on the Class Action Fairness Act (28 U.S.C. § 1332(d)(2)) to bring his claim on behalf of a putative class of all United States residents who purchased Boner Bears during the six (6) years preceding the filing of this case. (*Id.* ¶¶ 20, 29–36.) In response, the Defendants move to dismiss, or alternatively to strike certain portions of, Keegan's complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f), respectively. (Mot., ECF No. 15.) In moving to dismiss, the Defendants submit that Keegan's claim fails to comply with the heightened fraud pleading standard of Federal Rule of Civil Procedure 9(b), that the complaint is a shotgun pleading, that Keegan's claims for treble damages and attorney's fees must be dismissed, and that the class action allegations must be dismissed because they are defective on their face. (*Id.*)

Because the Court concludes that Keegan fails to plead his claim for common law fraud with the requisite particularity, it grants the Defendants' motion to dismiss, and declines to address their alternative arguments for dismissal or to strike certain portions of the complaint.

### 2. Legal Standard

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*,

516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. In other words, a complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *Id.*

### 3. Discussion

"[T]o allege a claim for common law fraud under Florida law, a party must set forth the following: 1) the defendant made a false statement or omission of material fact; 2) the defendant knew the statement was false; 3) the statement was made for the purpose of inducing plaintiff to rely on it; 4) plaintiff's reliance was reasonable; and 5) plaintiff suffered damages." *Arnold v. McFall*, 839 F. Supp. 2d 1281, 1289 (S.D. Fla. 2011) (Middlebrooks, J.) (citing *Mergens v. Dreyfoos*, 166 F.3d 1114 (11th Cir. 1999)).[2]

Significantly, Rule 9(b) of the Federal Rules of Civil Procedure requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Rule's particularity requirement is not satisfied by "conclusory allegations that certain statements were fraudulent; it requires that a complaint plead facts giving rise to an inference of fraud." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (citation omitted). As noted by the Eleventh Circuit:

---

[2] Because "[t]his action was brought in federal court on the basis of the Class Action Fairness Act's grant of diversity jurisdiction[,] . . . state law applies to any issue not governed by the Constitution or treaties of the United States or Acts of Congress." *Hallums v. Infinity Ins. Co.*, 945 F.3d 1144, 1148 (11th Cir. 2019) (cleaned up). The parties here have not raised a conflict of laws issue and appear to agree that Keegan's claims are governed by Florida law. Accordingly, the Court will likewise examine the issues raised by the Defendants' motion to dismiss under Florida law. *See id.* (examining the various claims asserted on appeal under Florida law because neither side rejected the District Court's decision to rely on Florida law); *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., Ltd. Liab. Co.*, 601 F.3d 1143, 1148 (11th Cir. 2010) (same); *Westbrook v. Safeco Life Ins. Co.*, 908 F.2d 927, 929 n.3 (11th Cir. 1990) (citing *Cavic v. Grand Bahama Dev. Co.*, 701 F.2d 879, 882 (11th Cir. 1983) for the rule that "when no party raises the issue, court follows the general rule of applying the law of the forum state in diversity cases").

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (internal quotations and citations omitted).

The Defendants argue that Keegan fails to plead the circumstances constituting the alleged fraud with the requisite specificity, focusing on Keegan's failure to tailor his allegations to establish each Defendant's respective misconduct. In summary, they argue that Keegan fails to allege any facts specifying which of the Defendants is responsible for participating in which fraudulent actions, instead making conclusory allegations of fraud against all the Defendants generally. Keegan counters that his complaint clearly specifies the conduct and roles of each of the Defendants in the purported fraud. In support, he points to the allegations that:

(i) the Defendant Minahan "owns, operates and controls the" Boner Bears enterprise;
(ii) the Defendant Perk Industries Inc. "is owned, operated and controlled by [the] Defendant Minahan" and "successfully, albeit fraudulently, petitioned the *U.S. Patent and Trademark Office* to grant a trademark for the Boner Bears mark as an herbal dietary supplement without disclosure that it was, in fact, covertly and unlawfully adulterated with a pharmaceutical"; and
(iii) the Defendant Innovative Health Labs Inc.'s "business premises . . . are used by [the] Defendants to prepare, package and ship the Boner Bears product to consumers throughout the United States."

(Resp. 5–6, ECF No. 16 (quoting Compl. ¶¶ 10–12, ECF No. 1).) For the reasons explained below, however, the Court finds that Keegan's allegations fail to meet Rule 9(b)'s particularity requirements.

To begin, most of Keegan's allegations as to the "what"—*i.e.*, the false statements or omissions allegedly made by the Defendants—are deficient in multiple ways. Keegan rarely provides the precise statements allegedly made by the Defendants. Instead, the complaint largely includes general allegations to the effect that "[a]ccording to the Defendants . . . **Boner Bears**[] is an efficacious, *natural* herbal remedy for erectile dysfunction," and that "the Defendants advertised, marketed distributed and sold Boner Bears[.]" (Compl. ¶¶ 2, 13, ECF No. 1 (emphasis in original).) However, while these allegations leave the reader

with the impression that the Defendants engaged in a fraudulent campaign to sell Boner Bears, they are totally vague as to the actual content of that campaign. *See, e.g., Kaufman v. Wyeth Co.*, No. 02-22692-CIV, 2011 U.S. Dist. LEXIS 157224, at *7-8 (S.D. Fla. Apr. 11, 2011) (Ungaro, J.) (concluding that allegations failed to meet Rule 9(b)'s specificity requirements where, among other reasons, the plaintiff "fail[ed] to identify the exact texts she claim[ed] [we]re misleading and the exact texts on which she and her physician relied").

On the two occasions that Keegan does provide specific quotations of the Defendants' allegedly false statements, he fails to provide other critical information, such as location and time. Thus, while Keegan charges the Defendants with specifically saying that Boner Bears contain "a proprietary blend of organic ingredients designed to increase performance in the sack" and with instructing purchasers to "consume 2 Boner Bears gummies at least one hour prior before [sic] sexual activity[,]" he does not indicate where or when these statements were made. (Compl. ¶ 2, ECF No. 1.)

Where Keegan comes closest to meeting the standard of Rule 9(b) is with the allegation that the Boner Bears label fails to disclose the presence of tadalafil among the product's ingredients. (Compl. ¶ 15, ECF No. 1.) As touched on above, "[i]n certain circumstances, '[f]raud also includes the intentional omission of a material fact.'" *See State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1317 (S.D. Fla. 2017) (Moore, J.) (quoting *Ward v. Atl. Sec. Bank*, 777 So. 2d 1144, 1146 (Fla. 3d DCA 2001)). By highlighting the omission of tadalafil from the Boner Bears label, Keegan has pointed to a unique piece of information, the precise location from which it is missing, and the circumstances in which the omission of that information would be misleading to a consumer (*i.e.*, at the moment of purchase). However, various other defects in Keegan's pleading further prevent it from meeting the particularity requirement of Rule 9(b).

Perhaps most importantly, the Court agrees with the Defendants that Keegan has failed to tailor his allegations to adequately set forth the fraudulent conduct attributable to each of them separately. As the Eleventh Circuit has explained in analogous circumstances, a plaintiff may not "simply lump[] together all of the [d]efendants in their allegations of fraud." *See Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1381 (11th Cir. 1997) (cleaned up) (quoting *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir.1994)). Rather, "in a case involving multiple defendants . . . 'the complaint should inform each defendant of the nature of his alleged participation in the fraud.'" *Id.* (quoting *Vicom, Inc.*, 20 F.3d at 777–78). But the complaint in this case is "devoid of specific allegations with respect to the separate Defendants." *See id.*

Instead, Keegan vaguely attributes the alleged fraudulent statements and omissions to all three of the Defendants simultaneously.

Taking the allegation that the Boner Bears label fraudulently fails to disclose the presence of tadalafil as an example, the complaint fails to tie this omission to any one Defendant's conduct. Keegan only alleges generally that the "Defendants" as a group "conceal the substantial presence of Tadalafil in Boner Bears[,]" and that the "Defendants' false labeling . . .[,] their false representations . . ., as well as their conscious, deliberate failure to disclose that Boner Bears is adulterated with a pharmaceutical, constitute material misrepresentations and concealment of material fact." (Compl. ¶¶ 15, 30, ECF No. 1.) But these allegations do not meet Rule 9(b)'s requirement because they lump together the Defendants and fail to inform each of them of the nature of their alleged participation in the fraud.

Moreover, the allegations that Keegan highlights in his response to the motion to dismiss only address the Defendants' general roles in the purported scheme. *See generally* (Compl. ¶¶ 10–12, ECF No. 1 (describing the Defendants' roles as owner/operator, trademark applicant, and producer).) Those allegations do not specify which of the Defendants is responsible for which statements or omissions, and they do not otherwise provide facts tying a particular Defendant to the same. *Cf. Mollicone v. Universal Handicraft*, Civil Action No. 17-21468-Civ, 2017 U.S. Dist. LEXIS 195541, at *12-13 (S.D. Fla. Nov. 28, 2017) (Scola, J.) (finding Rule 9(b)'s requirement met where the plaintiffs alleged that, as the president of a company, the defendant "direct[ed] and control[led] the marketing and labeling of the [] products, that [he] dominate[d] the management and control of [the company], that he exercise[d] total operational control and decision-making power including product origination and development, marketing, sales, and promotion, and that he actually participated in the conduct alleged"). Keeping with the example of the Defendants' alleged fraudulent failure to disclose the presence of tadalafil in Boner Bears, the allegations Keegan highlights do not even suggest which of the Defendants may have been responsible for creating or approving the content of the product's label.

Finally, Keegan's failure to tailor his pleading to set forth the Defendants' alleged misconduct with specificity, in turn, leaves them without fair notice of other important aspects of the claim against them, such as when they made the misrepresentations or whether they knew the misrepresentations were false. *See, e.g., Aboujaoude v. Poinciana Dev. Co. II*, 509 F. Supp. 2d 1266, 1276 (S.D. Fla. 2007) (Huck, J.) ("The [Plaintiffs'] failure to plead with specificity the circumstances constituting fraud are compounded in this case because they have alleged fraud against multiple defendants. In order to ensure that

Defendants have adequate notice of the charges against them, the [Plaintiffs] must indicate with specificity which Defendant . . . is responsible for which false statements and fraudulent actions.").

In short, the Court concludes that Keegan's complaint is subject to dismissal without prejudice for failure to plead fraud with the requisite specificity under Rule 9(b).

### 4. Conclusion

For the reasons stated above, the Court **grants** the Defendants' motion to dismiss the complaint for failure to state a cause of action for fraud, dismissing the complaint **without prejudice**. (**Mot., ECF No. 15**). Because Keegan's sole claim for common law fraud fails on threshold grounds, the Court need not and does not reach the additional issues raised by the Defendants' motion, such as whether the complaint is a shotgun pleading or whether certain portions of it should be struck pursuant to Rule 12(f).

Additionally, as Keegan has not requested leave to amend, nor indicated any inclination to do so, the Court dismisses his complaint **without leave to amend**. *See Wagner v. Daewoo Heavy Industries Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."); *Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 683 (11th Cir. 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend."); *compare with Carter v. HSBC Mortg. Services, Inc.*, 622 F. App'x 783, 786 (11th Cir. 2015) ("A pro se plaintiff, however, *must* be given at least one chance to amend the complaint before the district court dismisses the action with prejudice, at least where a more carefully drafted complaint might state a claim.") (cleaned up) (emphasis in original).

Finally, the Clerk is directed to **close** this case.

**Done and ordered** in Miami, Florida, on June 7, 2023.

Robert N. Scola, Jr.
United States District Judge